## M'CONNELL against HAMPTON.

In an action for an assault and false imprisonment against a military commander, for arresting the plaintiff, a private citizen, on a charge of treason, confining him for five days, and trying him by a court martial, the jury found a verdict for the plaintiff, for 9000 dollars, damages; and a new trial was granted on the ground of the excessiveness of the damages.

THIS was an action of assault and false imprisonment, &c. tried before the Chief Justice, at the Albany circuit, in October, 1814. It appeared from the evidence given at the trial, that in the month of August, 1813, the defendant was commander of the army of the United States, at Burlington, when the plaintiff, a private citizen, was arrested and tried by a court martial. The plaintiff came to the defendant to make some communication relative to the enemy; and the defendant said the communication was false, and ordered the plaintiff to be taken to the guard house, and said he would have him tried. The plaintiff was confined from Tuesday until Sunday; and lay on the floor of the guard house, without any bed, but was allowed to procure his own provisions, and the rations of a soldier, and was permitted to speak to others, in the presence of the officer, but not to leave the guard house. The witness stated that the plaintiff was "a back and forth trader, and of a respectable character." The defendant declared to the witness, that he should have been justified to have hanged the plaintiff immediately at the halberts, but would have him tried by a court martial; that the defendant afterwards declared, that the plaintiff was not in a worse situation than he ought to be, that he could convict him, and that he should be convicted, if possible, and hanged; for he was guilty of treason, and had been in company with two British officers, and had given information to the enemy.

The witness stated, that two *British* officers had come into the house where he and the plaintiff were, at *Alsburgh,* about a mile from the *Canada* line, at the time the *British* army were coming to *Plattsburgh.* Another witness stated that he believed that the communication made by the plaintiff to the defendant was true ; that at the time of the court martial, the defendant appeared much prejudiced against the plaintiff, and it was understood that there had been some personal difference between them.

It was stated by a witness, that the defendant was a man of liberal education, and that his yearly income was above sixty thousand dollars.

The jury found a verdict for the plaintiff for nine thousund dollars damages.

A motion was made to set aside the verdict, and for a new trial, on the ground of excessive damages.

*Van Vechten* for the defendant.

*Henry,* contra. He cited 9 *Johns. Rep.* 45. 10 *Johns. Rep.* 443. 1 *Lev.* 97. 2 *Mod.* 150. 4 *Term. Rep.* 651.

THOMPSON, Ch. J. That courts have a legal right to grant new trials, for excessive damages in actions for *torts* is no where denied ; but, on the contrary, has been universally admitted, whenever the question has been agitated. That this power, however, ought to be exercised cautiously, and with sound legal discretion, for the purpose of promoting the ends of justice, cannot be questioned. The difficulty is, in applying those rules to given cases. The great and leading object in actions of this description, as well as in all other private suits, is to recover compensation for an injury sustained. But in personal *torts* it is difficult, and, indeed, impossible, precisely to estimate the measure of damages, which would repair the injury. This must be, to a certain extent, matter of sentiment and feeling, under the guidance of sound judgment, duly weighing all the circumstances of the case. Hence, we can find but very little satisfaction in the examination of the reported cases on this subject. It is a question not susceptible of any fixed and definite rule. But the power of the court to grant new trials, in such cases, necessarily includes the right, and imposes on them the duty of judging, in some measure, between the injury proved

NEW-YORK,
May, 1815.

M'CONNELL
v.
HAMPTON.

and the damages given. According to the language, however, of adjudged cases, to justify the court in setting aside a verdict, the damages ought to appear outrageous, or manifestly to exceed the injury and such that all mankind would, at once, pronounce unreasonable, and so as to induce the court to believe, that the jury must have acted from prejudice or partiality, or were influenced by some improper considerations. It is not necessary that the court should believe that the jury acted corruptly. Their feelings might be so excited, or their passions so inflamed, as to mislead their judgments, and induce them to give a verdict, which their own sober reflection would not approve. The circumstances of this case, when viewed, on one side only, are very much calculated to excite feelings of indignation in a jury. If the defendant was wantonly exercising his military power, for the purpose of gratifying any private resentment, it was an aggravated case. And there is good reason to believe, from the amount of damages, that some such considerations must have operated upon the feelings of the jury, without duly weighing the circumstances, which went to show, and afforded good ground to believe, that the defendant acted under an honest, though mistaken opinion, that he had a right to try the plaintiff on a charge of treason.

If this is the fair conclusion, to be drawn from the testimony, it must strike every one, at first blush, that the damages given by the verdict are unreasonable, and, indeed, outrageous. It is not, therefore, a case of the mere assessment of damages, upon an undisputed state of facts ; but where different men might very honestly draw different inferences, as to the motives which influenced the conduct of the defendant. To refuse a new trial in this case, would, in effect, be saying, that a new trial ought never to be granted in actions of this description. Although the defendant is a man of very large fortune, the plaintiff's injury is not thereby enhanced. And, under all circumstances, I am inclined to think it will be a discreet exercise of the power of granting new trials to send this cause back for the consideration of another jury.

SPENCER, J. The rule for granting or refusing new trials, in actions for a personal injury, is well settled. To justify the granting a new trial, the damages must be flagrantly outrageous and extravagant, evincing intemperance, passion, partiality, or

corruption, on the part of the jury. That the court have the power to grant new trials, in actions for personal torts where excessive damages have been given, and that this power has been frequently exerted, cannot be denied. It was done in *Wood* v. *Gunston*, (*Styles* 462.) in *Ash* v. *Ash* (*Comb.* 357.) in *Chambers* v. *Robinson* (1 *Str.* 692.) in *Clerk* v. *Udall*, (*Salk.* 649.) and in *Jones* v. *Spurron*, (5 *T. R.* 257.). In the last case, a verdict had been obtained, in an action for an assault and battery, for 40 pounds, and a new trial was granted for excessiveness of damages.

In applying the general principle, every case must be tested by its own peculiar circumstances, and when the court cannot but perceive that the damages given are enormously disproportioned to the case proved, the only power claimed by the court is, to submit the case to the revision of another jury. This principle was very ably illustrated in *Duberley* v. *Gunning* (4 *T R.* 657.) and it will be seen by a reference to the case of *Jones* v. *Spurron*, that Lord *Kenyon's* strong remark, that he had not courage enough to make the precedent of granting a new trial for excessiveness of damages, was confined to the case of *crim. con.* which said he, in *Jones and Spurron,* was a case *sui generis ;* and in the latter case, he had the courage to concur in granting a new trial for excessiveness of damages when they were only 40 pounds.

The facts in this case are few. The defendant in *August,* 1813, commanded the army of the United States at *Burlington,* and caused the plaintiff to be confined from *Tuesday* until the *Sunday* following. The plaintiff was brought to trial before a court martial instituted by the defendant, on the charge of treason, having been in company with two *British* officers, and with having given information to the enemy, and was acquitted. The evidence exhibits the defendant as having made violent declarations of what he could do to the plaintiff. It appears that the defendant was a witness before the court martial, and stated that the plaintiff made communications to him relative to the enemy, which were false. The witness, who proved the proceedings before the court martial, declares that he believed the communication made by the plaintiff to the defendant was true. On the other hand, it appears that the defendant had strong grounds for believing the plaintiff to be a suspicious

character. It is stated by one of the witnesses, that the plaintiff was at *Alsburgh*, about one mile on their side of the *Canada* line, at the time the *British* were coming to *Plattsburgh*, and that two *British* officers had come into the house where the plaintiff was, and that the plaintiff was a trader back and forth, and had been such for some time.

Upon these general facts, the jury have given 9000 dollars damages, and although it be true that the defendant possesses a large fortune, I cannot but believe, that the verdict proceeded from intemperance and passion, and that the damages are enormously disproportioned to the case proved.

The defendant, as commander in chief of a division of the army, being near the enemy's territory, and at no great distance from their forces, was bound, by every consideration of duty, as a soldier, and of patriotism, as a citizen, to avoid surprize and to guard himself against machinatious of every kind. There is strong ground to believe that the defendant acted under the impression that the plaintiff was a suspicious character, if not in the interest of the enemy ; he had been in company with British officers on our side of the line, and he was a smuggler, for this trading back and forth, imports nothing else. Under these circumstances, the defendant might very naturally believe, that a person who would hold even commercial intercourse with the enemy, contrary to the laws of the land, and his duty as a citizen, would feel little scruple in giving him false information ; and if his interest could be promoted, giving the enemy true and important information, which might betray the army under the defendant's command into their hands.

It seems to me that the jury have wholly overlooked the critical and delicate situation of the defendant, as a commander of an army upon the frontiers, as also the very suspicious light in which he must have viewed the plaintiff. The declarations made by the defendant, that he would have been justified in immediately hanging the plaintiff at the halberts, were immediately qualified by the declaration that he would have him tried before a court martial, and it does not appear that he then knew he was a citizen.

Although the defendant's conduct is not to be justified, there are circumstances of extenuation, of which the jury have en-

2

NEW-YORK,
May, 1815.

M'CONNELL
v.
HAMPTON.

tirely lost sight. I am strongly persuaded, that there never was a case which more emphatically required the interposition of the court, to set aside a verdict strongly marked with intemperance and passion, for the purpose of a revision by another jury.

VAN NESS, J., dissented.

New trial granted,