## TOMPSON *vs.* MUSSEY.

In cases of *tort*, the Court will not set aside a verdict on the ground of excessive damages, unless from their magnitude, compared with the circumstances of the case, it be manifest that the jury acted intemperately, or were influenced by passion, prejudice, partiality, or corruption.

Under *Stat.* 1821, *ch.* 115, *sec.* 14, it is sufficient if the assessors post up notice of the time and place of their intended session to receive evidence of the qualifications of voters; without causing such notice to be inserted *in the warrant* for calling the town meeting.

THIS was an action of trespass on the case, in which the plaintiff alleged that the defendant had maliciously, and without probable cause, procured him and two other assessors of the town of *Standish* to be indicted for not making out a correct alphabetical list of voters in said town previous to the annual meeting in *March* 1823; and for not being in session in some convenient place to receive evidence of the qualifications of persons whose names were not on such list; and for not giving public notice of such session *in the warrant* for calling the town meeting; of which they were acquitted.

At the trial, which was upon the general issue, before *Weston* J. it was proved that no notice of the time and place when and where the assessors would be in session, to receive evidence of the qualifications of persons whose names were not on the list of voters, was *inserted in the copies of the warrant* which were posted up, notifying the town meeting.—And the county attorney, *Mr. Fitch,* testified that when he drew the indictment, he gave it as his opinion to the defendant that the law required such notice to be inserted *in the warrant*.

It was also proved that such notice *was* posted up, *on a separate piece of paper*, adjoining to, or near, each of the copies of the warrant put up in the town.

The Judge instructed the jury that if, from the whole evidence, they were satisfied that the defendant knew that the notice was thus posted up, although it was not inserted in the copies of the warrant, and did not state this fact to the grand jury, as he was bound to do, he being a witness before them, and it appearing in evidence that the indictment was found upon his testimony, prob-

able cause was not made out.—But that, if it did not appear that he knew the fact that notice was so posted up, there was then so much color for the prosecution, as well from the terms of the statute, as from the opinion of the county attorney, that probable cause was made out.

On the subject of damages he instructed the jury that there was no fixed rule or standard by which to estimate them. It would be for the jury to determine the amount, in the exercise of a sound discretion, taking into consideration the expense to which the plaintiff had been subjected, his trouble and anxiety, and the ignominy of being arraigned at the bar of justice as an offender against the laws.

It appeared from a vote of the town of *Standish* that they assumed the defence of the indictment against their assessors, " saving to the town all remedies against said selectmen and " assessors for gross and wilful negligence, in the discharge of " their duty as such." And it was thereupon urged by the counsel for the defendant that the plaintiff's expenses in defending himself against the indictment ought not to be taken into the estimate of damages. But the Judge instructed the jury that they ought to be estimated, notwithstanding that vote, if the plaintiff was entitled to any damages.

The jury hereupon returned for the plaintiff a verdict of eight hundred dollars; which was taken subject to the opinion of the Court upon the correctness of the Judge's instructions. The defendant also moved the Court to set aside the verdict because the damages were excessive.

*Greenleaf* and *Adams,* for the defendant, contended that upon the evidence in the case the plaintiff was indictable, and ought to have been convicted. By the *Stat.* 1821, *ch.* 115, *sec.* 1 and 14, it is made the duty of selectmen and assessors to be in session at some convenient place, and to give public notice thereof " *in the warrant*" for calling the town meeting. The law being thus explicit, an inspection of the warrant was all that was necessary to determine whether it had been complied with, or not. If the defendant was wrong in supposing that a notification posted up in *another* place was not a notice inserted *in the warrant;* yet the

official opinion of the county attorney to the same effect ought to .protect him from prosecution. Both these considerations, and the fact that the traverse jury retired and *deliberated* on the case, are relied on to prove probable cause. *Smith v. McDonald 3 Esp. 7. Lilwall v. Smallman Selw.* 946. *Bull. N. P.* 14. *Leigh v. Webb* 3 *Esp.* 165. 1 *Wils.* 232. *Peckham v. Whitney* 15 *Mass.* 243. *Jones v. Gwynn Gilb. Rep.* 185. *Kirtley v. Deck* 2 *Munf.* 18.

But this was not a point for the defendant to make out. In the matter of probable cause, the *onus probandi* is on the *plaintiff*, to shew the *want of it*;—yet the Judge treated this as the duty of the defendant, which may have led to the verdict against him. *Anon.* 6 *Mod.* 73. *Golding v. Crowle Bul., N. P.* 14. *Purcell v. McNamara* 1 *Camp.* 199. 9 *East* 361. *Sykes v. Dunbar* 1 *Camp.* 202, *note. Incledon v. Berry ib.* 203. *Munns v. Dudont* 2 *Brown's Rep. app.* 61. 4 *Hall's Law Jour.* 107. *Cox v. Worrall Yelv.* 105, *note.*

Further, the jury were instructed that the defendant was bound, *at all events* to state to the grand jury that the notice was posted on another paper;—whereas, having good reason to believe it immaterial, it should have been left to them to determine whether he suppressed the fact designedly, or honestly omitted to state it.

They also contended that this was an action not to be favored; —*Savill v. Roberts* 1 *Salk.* 15. 2 *Esp.* 536,—and that the damages were excessive. The town had stipulated to reimburse the plaintiff's expenses; he attended but one term; and the indictment involved no imputation whatever upon his moral character. The term " *ignominy*" was inapplicable to his trial, and tended to mislead the jury. *Sampson v. Smith* 15 *Mass.* 365. *McConnell v. Hampton* 12 *Johns.* 234.

*Fessenden* and *Deblois*, for the defendant, ͏argued ˌthat a literal compliance with the terms of the statute was not in the power of assessors; since they have no control over a warrant for a town meeting, which is issued by the selectmen. The reference therefore in *sec.* 14, to the *first* section of the *Stat.* 1821, *ch.* 115, must be understood to relate to the *convenient place* mentioned in

the latter section, and not to the manner of giving the notice. They did all in their power to give notice; and this the defendant well knew, but wilfully suppressed, as the jury have found.

But the defence is not placed on the existence of facts and circumstances tending to excite a reasonable suspicion of guilt; but on a misconception of the law. This, however, is no ground to justify *any* malicious prosecution. *Waterer v. Freeman Hob.* 266. 1 *Salk.* 14, *note. Robinson v. Chambers* 2 *Stra.* 691. *Goslin v. Wilcock* 2 *Wils.* 302. *Weeks v. Fentham* 4 *D. & E.* 247. *Hewlett v. Crutchley* 5 *Taunt.* 277. The case of *Leigh v. Webb* 3 *Esp.* 165, is different from this, because there the mistake was that of the magistrate, and not of the prosecutor.

As to the *deliberation* of the traverse jury, that fact forms no part of the case reserved; and if it did, it would be of no importance, unless the evidence on which they deliberated was other than that of the prosecutor himself. If it were otherwise, no malicious prosecutor could be punished, while he retained enough of character to induce a single juror to hesitate whether to believe him or not. But the position of the defendant on this subject is not founded in authorities, as is apparent from *Gilbert v. Burtenshaw Cowp.* 230. *Farmer v. Darling* 4 *Burr.* 1971.

Against the motion to set aside the verdict for excessive damages, they insisted that however Judges may have speculated on this question, it would be found that they had never set aside a verdict for excessive damages, unless the case furnished in itself some principles by which they could be estimated by the Court; or unless it was manifest that the jury had grossly misunderstood the case, or had acted from intemperate passion and prejudice, plainly apparent;—traits which this case did not disclose. To this point they cited *Leman v. Allen* 2 *Wils.* 160. *Huckle v. Money* 2 *Wils.* 205. *Gilbert v. Burtenshaw Cowp.* 230. *Beardmore v. Carrington* 2 *Wils.* 244. *Wilford v. Berkley* 1 *Burr.* 609. *Duberley v. Gunning* 4 *D. & E.* 651. *Redshaw v. Brook* 2 *Wils.* 405. *Brun v. Hawkins* 3 *Wils.* 61. *Ducker v. Wood* 1 *D. & E.* 277. 2 *Stra.* 940. *Chambers v. Caulfield* 6 *East* 244. *Coffin v. Coffin* 4 *Mass.* 1. *Benson v. Frederick* 3 *Burr.* 1845. *Tillotson v. Cheetham* 2 *Johns.* 74. *Ogden v. Gibbons* 2 *South.* 538.

Tompson *v.* Mussey.

MELLEN C. J. delivered the opinion of the Court, as follows.

The counsel for the defendant contends that the neglect charged in the indictment against the plaintiff was a clear and direct violation of a well known law; and as it was not and could not be pretended that notice had been given, in the manner the statute directed, these facts of themselves furnished satisfactory proof of probable cause;—and he further contends that the opinion delivered to the defendant by the attorney for the State was proof of probable cause ; and that it was the duty of the plaintiff to furnish proof of the want of probable cause, and that the *onus* was not on the defendant to show that there was probable cause. In the discussion and application of these principles several questions have been examined. Some of them need not be re-examined and decided by us. For instance, it is unnecessary to determine whether the opinion of the county attorney was, under the circumstances of this case, proof of probable cause; inasmuch as the Judge decided that point in favor of the defendant, if the jury should acquit him of the alleged suppression of an important fact in his testimony before the grand jury; but this they have not done. As the defendant therefore has had the benefit of this principle, so far as the facts of the case would justify the Court and jury in its application to him, he has no reason now to complain on that account.

Nor do we think it of importance in this case to examine particularly the question whether the proof of want of probable cause must always be adduced by the plaintiff ; or whether proof of probable cause must be adduced by the defendant. Because it is admitted, though not particularly stated in the report, that the plaintiff introduced proof shewing what was the testimony of the defendant before the grand jury ; the alleged suppression of an important fact well known to the defendant at the time of giving his testimony, was the circumstance relied on to shew a total want of probable cause ; and this fact was proved by the plaintiff. The jury have decided that there was this suppression. But the counsel for the defendant has said that the fact was, or might have been omitted by mistake or forgetfulness ; and then could not be imputed to him as evidence of want of probable

cause.   The language  of  the  Judge, however,  was that  if he  " did not state or testify this fact, as he was bound to do ;"——and this language  could not  have been  misunderstood by the jury ;  or construed to mean or embrace  the  case of  omission by mistake or  forgetfulness.   Every  man  would  understand that  he  was speaking of an intentional and fraudulent  suppression of the  fact alluded to.   We are thus led directly to the point,  whether  the Judge was correct in his decision that  the  fact  thus  suppressed and concealed from the knowledge of the grand jury was proof of the want of probable cause ;  and this leads us to  the  fact itself.

It was proved  that no notice  of the  time and place when the assessors would be in session to receive evidence of qualifications of persons whose names were not on the list of voters, was insert- ed in the copies of the  warrants  posted up, notifying the  town. meeting.   But such notice was posted up on a separate piece of paper, adjoining  or  near  to  each of the copies of the warrant. This fact, the verdict finds  the  defendant knowingly suppressed and concealed from the grand jury.   The counsel for the plaintiff has argued upon  the  singular  provisions of the law in  requiring the assessors to give the notice before mentioned by causing it to be inserted in the warrant for calling the town  meeting ;  which warrant was  issued  by  the selectmen ;  over whom or whose actions the assessors can have no control.   This provision is cer- tainly not very reconcilable with the rights, duties and liabilities of selectmen and assessors respectively.   We  do not, however, deem it  essential  in  the decision of  this cause, to pursue this inquiry.   And now what is probable cause ?   Various definitions of it have been given ;  and from  the  nature  of the  case there must be a vast variety of facts which may constitute it ;  and per- haps in no two cases  will  the  facts be in  all  respects similar. Hence the necessity of some general character as to the facts which constitute this probable cause.    In *Smith v.  McDonald* 3 *Esp.* 7, Lord *Kenyon* nonsuited the plaintiff because, at  the  trial of the indictment, the evidence offered to the jury  caused  them to pause ;  and this he  held  proof  of probable cause.   With all due respect we would observe that  this seems  a  most  uncertain criterion.   In many cases the  reason of their pausing  may  be wholly unknown,—may  be accidental, without any motive, and

perhaps from motives of personal convenience ; perhaps from personal feelings on the part of one or more of the jury ; in fact, from reasons of no importance and having no connection with the merits of the cause. In the page of *Buller* to which the Court have been referred, no criterion or rule is given, but only general principles are stated. In *Leigh v. Webb* 3 *Esp.* 165, Lord *Eldon* nonsuited the plaintiff, on the ground that the evidence did not support the declaration ; and that the defendant had never made against the plaintiff a charge of felony. The case has no application here. In *Reynolds v. Kennedy* 1 *Wils.* 232, the sub-commissioners had condemned certain goods on the defendant's information ; and this appeared on the plaintiff's declaration. The cause was decided expressly on the ground that the prosecution was not malicious—not a word is said about the want of probable cause. In *Whitney v. Peckham* 15 *Mass.* 243, there had been a conviction of the plaintiff before a justice of the peace; and an acquittal on the appeal in the Court of Common Pleas. In the absence of all other proof, this conviction was deemed sufficient evidence of probable cause.

The definition of probable cause as given in 2 *Munford*, is founded on and includes the idea of perfect fairness on the part of the defendant in the prosecution, excluding all supposition of art or concealment of material facts. The definition given by *Weston* J. in delivering the opinion of the Court in *Ulmer v. Leland* 1 *Greenl.* 135, is this—" Probable cause in general may be " understood to be such conduct on the part of the accused, as " may induce the Court to infer that the prosecution was under- " taken from public motives." We perceive no reason to question the accuracy of this description or definition of probable cause, nor the sound good sense of it. Testing the conduct of the defendant before the grand jury, in suppressing his knowledge of the fact in relation to the assessors' notice in the manner it was given, by the rule laid down in *Ulmer v. Leland*, we are satisfied, not merely that probable cause has not been proved ; but that the want of it has been proved. For, admitting that the requisitions of the statute had not been in strictness complied with ; still the notice was given, in all probability, as effectually, as if it had been inserted in the warrant of the selectmen. And there is

strong ground for believing, that if the defendant had fairly and frankly testified before the grand jury to all the facts he knew in relation to this subject, no indictment would have been found. On the whole, we are of opinion that the cause was submitted to the jury on proper and legal principles, and that on the grounds which we have been considering there is no foundation to support the motion to set aside the verdict.

As to the motion at common law for a new trial on the ground of excessive damages ; we are not disposed, because it is not necessary, to review and examine the merits of the long catalogue of cases in the books wherein similar motions have been made and decided. Numerous cases have been cited and commented upon at large by the counsel. We shall close this opinion with one or two general observations, and by extracting from the cases on this subject the spirit of the decisions and the general principle that must govern.

It has been urged that actions of this kind are not to be favored; that they have a tendency to discourage prosecutions, and thereby indirectly produce an injury to the community. We wish it to be understood that no particular class of actions is to be favored or discountenanced in our Courts of justice. These terms when applied in this manner, we hope will be considered as destitute of meaning, in respect to the administration of the laws, where legal principles are the rules of decision. So far as proceedings in our Courts are governed merely by the discretion of the Judges, it is to be desired that they should always have a steady eye to the substantial justice and equity of the case, and the protection of rights from a particular danger, to which they might be exposed by the rigid application of a general principle of law. What are excessive damages ? No answer can be given applicable to all cases. Each cause has some peculiar features, which a Court has in view in deciding whether excessive damages have been given. Different Courts and Judges have labored to find some language adapted to convey the general idea with as much distinctness and precision as possible ; so that the decision might be afterwards considered as a rule by which to decide subsequent cases. This uncertainty as to the rule exists principally in cases of tort. In those of contract there is almost in every case a plain

rule by which to estimate damages. The difficulty exists in that class of actions where compensation is sought for injuries arising from passion, cruelty, malice or violence. Thus in *Leeman v. Allen* 2 *Wils.* 160, the Chief Justice says, " if damages " be unreasonable and outrageous indeed; as if 2000*l.* or 3000*l.* was " to be given for a little battery, which all mankind might see to " be unreasonable at first blush ; certainly a Court would set " aside such a verdict." And in *Ash v. Ash Comb.* 357, Lord *Holt* says, (speaking of damages in actions for tort) " the Court " must be able to say the damages are beyond all measure unrea- " sonable." In *Huckle v. Money* 2 *Wils.* 205, the Lord Chief Justice says, " it is very dangerous for the Judges to intermeddle " in damages for torts ; it must be a glaring case indeed of out- " rageous damages in a tort, and which all mankind at first blush " must think so, to induce a Court to grant a new trial for exces- " sive damages." In *Gilbert v. Burtenshaw Cowp.* 230, Lord *Mansfield* says, when speaking of granting new trials in cases of torts, " it is not to be done without very strong grounds indeed, " and such as carry internal evidence of intemperance in the " minds of the jury ; unless it appears that the damages are " flagrantly outrageous and extravagant, it is difficult for the " Court to draw the line." In *Beardmore v. Carrington* 2 *Wils.* 244, in an action of trespass and false imprisonment, the Court say, " we desire to be understood that this Court does not say, or lay " down any rule, that there never can happen a case of such " excessive damages in tort, where the Court may not grant a " new trial ; but in that case the damages must be monstrous and " enormous indeed ; and such as all mankind must be ready to " exclaim against at first blush." In *Duberley v. Gunning* 4 *D. & E.* 651, the jury gave 5,000*l.* damages. On motion for a new trial it was refused. *Buller* J. says, " the only power which the " Courts now claim is to send the cause back to another jury, " when they think that the damages given are enormously dispro- " portioned to the case given in evidence." In *Bruce v. Rawlins* 3 *Wils.* 61, *Yates* J. says, " the case must be very gross and the " damages enormous, for the Court to interfere." In *Coffin v. Coffin* 4 *Mass.* 1, *Parsons* C. J. says, " before we can set aside " this verdict on account of these damages, we must infer from

"their magnitude, ($2,500) under all the circumstances of the "case, that the jury acted intemperately, or were influenced by "passion, prejudice or partiality." In *Southwick v. Stevens* 10 *Johns.* 443, the Court say, that in actions for libels and torts, they will not set aside a verdict on the ground of excessive damages, unless they are flagrantly outrageous and extravagant. In *McConnell v. Hampton* 12 *Johns.* 234, *Thompson* C. J. says, "that to justify the Court in granting a new trial in "cases of torts, the damages ought to appear outrageous, and "manifestly to exceed the injury, and such that all mankind "would at once pronounce unreasonable, and induce the Court to "believe that the jury must have acted from prejudice or par- "tiality;"—and *Spencer* J. says, "to justify the granting of a new "trial the damages must be flagrantly outrageous and extrava- "gant; evincing intemperance, passion, partiality or corruption." This case was cited by the defendant's counsel. It was an action of assault, battery and imprisonment by the defendant a military commander. The jury gave a verdict for $9,000,—and the Court granted a new trial on the ground that the damages were excessive; it appearing that little or no personal violence and injury had been done, though there was imprisonment and highly abusive language, threats and insults.

Comparing the facts in this case with the principal part of those cases which have been above noticed, and applying the principle of law as to granting new trials for excessive damages, as laid down in those cases, we are to decide whether the present cause is presented to us as coming within the range of the principle. The plaintiff's damages have been estimated by two successive juries in different Courts—and there is a difference of fifty dollars only between the two estimates. The verdict in this Court having been given for the larger sum. The jury had before them all the facts, in relation to the plaintiff's injuries in point of property, character and feelings; and to the defendant's disposition to effect his purpose of causing the plaintiff's conviction; and to the measures which he adopted with a view to accomplish that purpose; and also the evidence in relation to the character and property of the defendant. Looking at all the

Tompson *v.* Mussey.

facts, we do not feel ourselves authorized to say that the dama-ges are excessive, extravagant, and flagrantly outrageous, or that the jury were actuated by any reprehensible motives; this motion at common law therefore, cannot be sustained.

There is one other idea stated by the counsel when comment-ing on the Judge's instructions to the jury, on the subject of dama-ges, and the circumstances which they might take into considera-tion. He instructed them that they might, among other things, notice the ignominy of being arraigned at the bar of justice as an offender against the law. And why might they not ? Was it no ignominy to be arraigned on indictment for neglecting a duty which he had solemnly sworn to perform ; and on a charge affect-ing his character as an officer in the town ? We see no impropri-ety in this allusion. He stated only what was a fact, and informed them they might consider it in their estimate of dama-ges. It will thus be seen that it differs from the case of *Sampson v. Smith* 15 *Mass.* 165, cited by the defendant's counsel. There the Judge intimated his opinion to the jury upon a point of law, the natural and obvious tendency of which was to incline the jury to give greater damages than they would otherwise probably have assessed. As the Court on reviewing this intimated opinion were all satisfied it was incorrect, they set aside the verdict and granted a new trial, so that another jury might estimate the dam-ages upon those principles of law applicable to the character and authority of the defendant, as master of a vessel.

Our opinion is that neither of the defendant's motions can pre-vail, and accordingly there must be judgment on the verdict.