## Case No. 10,741a.

### PARKER v. LEWIS et al.

#### [Hempst. 72.] 1

Superior Court, Territory of Arkansas. Oct., 1829.

NEW TRIAL—EXCESSIVE DAMAGES—AMENDMENT OF PLEADINGS.

1. Courts have a legal right to grant new trials in actions for torts, on the ground of excessive damages, and may grant any number until the ends of justice are answered.

2. If a party, having leave to amend pleadings, files bad pleas, they may be stricken out on motion.

3. A plea which amounts to the general issue, or does not answer the whole charge or count, is bad.

[This was an action of trespass by Peter C. Parker against Eli J. Lewis and Peter Edwards.]

Before JOHNSON, TRIMBLE, BATES, and ESKRIDGE, JJ.

TRIMBLE, J. This is a suit brought by the plaintiff against the defendants, returnable to the October term of this court, 1828. The first count in the declaration is for breaking and entering the close of the plaintiff; the second is for taking and carrying away the goods of the plaintiff. At the October term, 1828, Lewis, one of the defendants, put in his plea, to which a demurrer was sustained, and he had leave to amend his pleading, and time was given to file his amendment. On the 18th of April, 1829, Lewis amended by filing three several pleas. The first is the general issue, to which no objection is made. The second is a justification under a judgment, confessed in vacation, under the statute and execution thereon, which judgment was afterwards confirmed in court. The third plea of Lewis is property in himself, as to the negroes in the second count mentioned; and says nothing as to the balance of the goods and chattels charged in that count to have been taken and carried away. At this term the plaintiff, by his attorney, moves the court to strike out the second and third pleas of Lewis. We think this motion must be sustained if the pleas are found to be bad. The

1 [Reported by Samuel H. Hempstead, Esq.]

second plea justifies under an execution issued on a judgment in vacation, before the same had been confirmed in court. We have heretofore declared, that judgments thus confessed before the clerk in vacation, are not complete until acted upon by the court, and confirmed. Under the statute (Geyer, Dig. 248, § 17, tit. "Judicial Proceedings"), clerks may sign all confessions of judgments taken in vacation, which in fact is but taking the acknowledgment of the defendant, of record, and it is reserved to the court to give judgment on such confession. No execution could issue until such judgment was rendered by the court, and therefore, it appearing by the plea of Lewis that the execution under which he justified did issue before the judgment was rendered by the court, his plea on that account is bad. The third plea is bad on two grounds: (1) If properly pleaded it would amount to the general issue; and (2) it does not profess, nor does it really answer the whole charge in the second count of the declaration. The defendant, by his attorney, insists that the plaintiff should be driven to take his exception to the pleas by demurrer. We think not. The defendant, after having filed one plea, which was adjudged bad on demurrer, ought not to be permitted to amend by filing pleas no better than the first. The defendant asked leave to amend, and it was his duty to have tendered good pleas, and the indulgence as to the time granted by the court, cannot place him in any better condition than he was in at the time of obtaining leave to amend. If the court would not have received those pleas if tendered, a fortiori they ought to strike them out, when filed under the indulgence of the court, giving the defendant time to amend his pleading. The second and third pleas of defendant must, therefore, be stricken out. Ordered accordingly.

Issue having been formed on the plea of not guilty, the cause was tried by a jury composed of Joseph McKnight, Asa G. Baker, Benjamin Clemens, G. W. McSweeney, James C. Collins, William Flanakin, Bartley Harrington, William Lenox, Kirkwood Dickey, Emzey Wilson, Samuel Williams, and William Dugan, who rendered the following verdict: "We, the jury, find for the plaintiff ten thousand dollars damages."

October 27, 1829.—On this day Judge TRIMBLE, the only judge in the court when the verdict of the jury was returned, handed into court a written statement of the finding of the jury, as follows: "We, the jury, find for the plaintiff ten thousand dollars damages," and being asked if that was their verdict, they said that Parker's note to Lewis for three thousand two hundred and twenty-two dollars and sixty-nine cents with interest was to be deducted, and that the balance was found against Lewis,

and that they found nothing against Edwards.

The plaintiff moved the court to render judgment for him on the verdict, which, after argument of counsel on both sides, was, on the next day, denied. On the 31st of October, 1829, a motion was made by the defendant Lewis for a new trial, and after due consideration a new trial was awarded, at the cost of the defendant. The plaintiff then moved that a venire facias de novo issue returnable to the present term, and that the cause be tried at the present term, but this motion was overruled by an equal division in the court, and the case was continued, with leave to the parties to take depositions.

At the next term, July 22, 1830, the cause came on for trial before Benjamin Johnson, James W. Bates, Edward Cross, and Thomas P. Eskridge, judges, and a jury was formed of the following persons, namely: Edward Shurlds, Dudley D. Mason, Nathan W. Maynor, John McLain, Cornelius W. Ennis, Jordan Stewart, Christian Brumback, Lewis Young, Burk Johnson, David Davidson, Ransalear Munson, and John H. Lenox, who, after hearing the evidence and arguments of counsel, retired to consult of their verdict, and returned into court with the following, namely: "We, of the jury, find the defendant, Eli J. Lewis, guilty in manner and form as charged in the plaintiff's declaration, and aver the plaintiff's damages by reason of the premises set forth in said declaration, to the sum of seven thousand, seven hundred and thirteen dollars. Burk Johnson, Foreman." And judgment was rendered for the plaintiff for the damages so averred, and for costs. Before the jury retired, the plaintiff asked and obtained leave to enter a nolle prosequi as to Peter Edwards, codefendant, which was done accordingly, and he was discharged.

On the next day, July 23d, 1830, the defendant Lewis moved for a new trial, for divers reasons set out in his motion, and on the 2d August, 1830, the same judges presiding, the motion was sustained, and a new trial awarded, on which occasion the unanimous opinion of the court was delivered as follows, namely:

ESKRIDGE, J. This is an action of trespass. There was a verdict during the present term for the plaintiff, for seven thousand, seven hundred and thirteen dollars, and the case is now before the court on a motion for a new trial. The material grounds assigned for a new trial are: First, that the damages are excessive, and second, that the verdict is contrary to law and evidence. That the case may be understood, a short history of it seems to be necessary. Parker, the plaintiff, confessed a judgment to Lewis, the defendant, before the clerk of the circuit court of Phillips county, in vacation, in which shortly thereafter an execution issued, which was levied on the plantation and other property of Parker. This proceeding at the time it occurred was perfectly regular, and in strict conformity with the acknowledged and universal practice of the country. At a subsequent period, however, it was decided by this court, that the confession of a judgment thus taken by a clerk, was irregular and invalid, and required to give it legal effect, to be confirmed by the court in term time. In the absence, then, of the decision of this court just adverted to, Parker had no ground of action. It is by virtue of that decision alone that he has a right to be heard in the present action.

There has been no evidence adduced, going to show that Lewis did not act in good faith, that he did not believe he was pursuing the remedy guaranteed to him by the then laws of the country for the recovery of a just debt. The evidence does not show any act of oppression or unfairness on the part of Lewis in vindicating his legal rights. What, then, was the fair criterion of damages in the present action? There is certainly not a case made out of vindictive damages. Allowing the jury all possible latitude in their estimate of damages, they certainly could not exceed the fair value of the property sold under the execution. What was the value of the property thus sold? Let us advert to the plaintiff's declaration, and the evidence adduced in its support. There are two counts in the declaration. The first for entering his close, destroying fences and crop. There was not a particle of evidence to show that the farm or crop was in the slightest degree injured. The farm, though levied on, was not sold, the fences were not torn down, nor the crop injured. The first count in the declaration is wholly unsupported by evidence, except by the facts that the farm was levied on, and that the corner was on it when he sold the personal property. The second count is trespass de bonis asportatis. What was the value of the personal property sold under the execution? It is a most difficult matter to estimate its value, for the evidence is very far from being conclusive and satisfactory. The evidence is clear as to seven bales of cotton, thirty-two head of hogs, thirteen head of cattle, one colt; and that the store goods sold under the execution for a little upwards of five hundred dollars; say that the goods were worth one thousand five hundred dollars, allowing two hundred per cent. more than they sold for at the sheriff's sale; putting the most extravagant estimate on the personal property sold under the execution, it could not have exceeded two thousand dollars in value. We have excluded the negroes from the estimate; it having been shown on the trial that the legal title to the negroes was in Lewis. He held a mortgage on them, and by virtue of it, had a right to their possession at any moment

he chose to assert it. That the mortgage on this property vested the legal title in Lewis the mortgagee, and that he had a right to reduce the negroes to possession, whenever an opportunity presented, are propositions that cannot be controverted.[2] It is true, Lewis resorted to rather a singular mode to gain possession of the negroes. But the objection comes with ill grace from Parker. Lewis had his own negroes sold, allowed a credit for the amount for which they sold, and Parker complains of it! Parker's equity of redemption could not be sold under execution, for the legal estate was in Lewis. 3 Atk. 739; 8 East, 467; 2 Bos. & P. (N. R.) 461b. But Parker has at this time a right to redeem these negroes, for his rights under the mortgage have not been impaired by the sale under the execution. It appears from this view of the case, that nearly six thousand dollars in vindictive damages were given by the jury. Did the law and the evidence authorize vindictive damages at all? We think not. But it has been said that juries in cases sounding in damages, have an unlimited and arbitrary control, and that they are in fact irresponsible, and that a court cannot grant a new trial. This position is certainly incorrect. It is not true when applied to actions for libels, slander, assault and battery, and other personal torts, for the books afford many instances of new trials granted for excessive damages in this description of actions. It was done in Wood v. Gunston, Style, 462; in Ash v. Ash, Comb. 357; in Chambers v. Robinson, 1 Strange, 692; in Clerk v. Udall, 2 Salk. 649; in Jones v. Sparrow, 5 Term R. 257; and in McConnell v. Hampton, 12 Johns. 234. In the last case a verdict had been obtained in an action for assault and false imprisonment, for nine thousand dollars, and a new trial was promptly granted by the supreme court of New York, for excessiveness of damages. Although the defendant was one of the most wealthy men in the United States, Chief Justice Thompson says, in giving his opinion, "that courts have a legal right to grant new trials for excessive damages, in actions for torts, is nowhere denied; but on the contrary, has been universally admitted, whenever the question has been agitated."

It is said by the court in the case of Payne v. Trezevant, 2 Bay, 33, that it was the duty of the court whenever the juries will take upon themselves to disregard the laws of the land, and clear and indubitable testimony, to set aside their verdicts toties quoties, until twelve men can be got firm enough to defend and support the legal institutions of the country. In Moore's Adm'r v. Cherry, 1 Bay, 269, a third new trial was

granted on similar grounds. But it must be borne in mind that the case now before the court is not for a personal tort, but is for an injury done to property, and the jury in their assessment of damages should have been governed by the pecuniary loss, unless it had been established by evidence that the defendant Lewis had been guilty of acts of malice and oppression, in which case the damages might have been enlarged. It is true, the record of the judgment confessed before the clerk in vacation was not read to the jury; but it was among the papers introduced by the plaintiff, and referred to in the argument of the counsel for the defendant. But, even admitting that there was no evidence before the jury of the confessed judgment, and that they ought to have found vindictive damages, still we are clearly of opinion the damages found by the jury are outrageously and flagrantly excessive.

The jury in the case now before the court, though highly respectable and intelligent, and certainly above all imputation of improper motives, were unquestionably influenced by false and unfounded considerations in estimating the damages. The case had been long pending; was publicly investigated at a former term; had been much talked of; had given rise to much excitement, and the jury were doubtless influenced by public opinion, and unconsciously disregarded the evidence. We can alone account in this way for damages so outrageously excessive, so entirely disproportionate to the injury sustained. On the ground of excessive damages, the verdict must be set aside.

It remains for us to answer another objection to the granting of a new trial. It has been said that this is a second application for a new trial. Admitting this, we are neither precluded by the plain language of our own statute, nor by the general principles of law, from granting a second new trial. Dig. 261; Moore's Adm'r v. Cherry, 1 Bay, 269; Goodwin v. Gibbons, 4 Burrows, 2108, or Morgan's Essays, 27 28. In Goodwin v. Gibbons, Lord Mansfield said: "There was no ground to say that a new trial should not be granted after a former new trial. There is no such rule. A new trial must depend upon answering the ends of justice." Justices Yates and Astor concurred, saying that a second new trial ought to be granted as well as the first, if the reasons were sufficient for granting it. But we deny, strictly speaking, that this is a second application for a new trial. In the former trial the finding of the jury was not received, on the ground of its uncertainty and insufficiency, and a new trial was awarded as a matter of course, on that account, and without the slightest reference to the merits of the case. The second ground for a new trial is "that the verdict is contrary to evidence and law." The first branch of this reason has been already discussed. As regards the second, we

---

[2] The suit was subsequently adjusted between the parties, and on January 11, 1831, on the motion of Chester Ashley, Esq., attorney for the defendants, was dismissed, the defendant paying the costs.

take it for granted, without reference to the affidavits of the two jurors, which were inadmissible, that the jury took into consideration, in estimating the damages, the value of the negroes; and if so, it was contrary to law and against the instructions of the court. It has already been shown that Lewis, by virtue of the mortgage, was invested with a clear and indisputable legal title to the negroes, and to their possession, and that he had a right to take possession of them at any time. It has also been shown that Parker's rights under the mortgage remain unimpaired, as he still retains the power to redeem. The jury were distinctly instructed to exclude the value of the negroes from their estimate of damages. The verdict of the jury being contrary to law, and against the express instructions of the court, must be set aside. A new trial awarded.