MARTIN O. WALKER *et al.*

*v.*

HUGH MARTIN.

1. HABEAS CORPUS — *presumption, and effect of discharge.* When no reason is assigned in the order of discharge, it will be presumed that the court examined into the merits of the case and became satisfied the criminal charge was not established. Under our statute a discharge upon *habeas corpus,* does not preclude an investigation by the grand jury.

2. MALICIOUS PROSECUTION — *when action may be commenced.* To maintain this action the plaintiff must show that the criminal prosecution was legally ended before the action was commenced. If the criminal prosecution be not ended at the time the action is commenced, then the action is premature.

3. On the trial of an action for malicious prosecution, the plaintiff who had been bound over to appear before the Recorder's Court of the city of Chicago, showed a discharge upon *habeas corpus,* by the Circuit Court of Cook county, to prove that the criminal prosecution had been ended ; *held,* that it should also have been made to appear on the trial that the State's attorney did not send the case with the recognized witnesses to the grand jury, or if he did send them that no steps had been taken by the people.

4. DAMAGES — *excessiveness of.* While great latitude must and is allowed juries in all actions for personal torts, yet it must be confined within some limits — no less for justice' sake than for the protection of the citizen.

5. Where, in estimating damages, it is obvious the jury was actuated by improper motives, or where the amount of the verdict is so extravagantly large as to shock the mind, and it is plain that the jury could not have taken into consideration that the plaintiff was a man of bad character, the court will not hesitate to set the judgment aside, on the ground that the damages are excessive.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was an action on the case brought by Hugh Martin against Martin O. Walker and Guy H. Cutting, in the Cook Circuit Court, for malicious prosecution. A change of venue was taken to Will county, where the case was tried before a jury, and resulted in a verdict and judgment in favor of appellee for twenty thousand dollars.

The declaration contains three counts.

The first and second of which allege, that on the 17th day of March, 1866, defendants charged plaintiff with larceny of coal, and caused a justice to issue a warrant for his apprehension, and on the 29th day of March, caused him to be arrested under said warrant — detained seven hours — and held to bail for his appearance at the next term of the Recorder's Court of the city of Chicago, and also committed him to the jail of Cook county, and there kept him for nine days then next following, until, on the 5th day of April, 1866, to procure his release from imprisonment, plaintiff sued out of the Circuit Court of Cook county, a writ of *habeas corpus*, by virtue of which he was conveyed before said court, on the 7th day of April, 1866, and then and there adjudged and determined not guilty of said supposed offense, and fully acquitted and discharged; and that defendants have not further prosecuted said complaint, but deserted and abandoned the same, and that the said complaint and prosecution is ended and determined.

The third count is general, and, without specifying any manner of discharge, alleges an arrest on the 29th day of March, 1866, for felony, and that at the expiration of nine days, the plaintiff was duly discharged and fully acquitted.

The plaintiff's evidence shows, that a warrant was issued against him on the 17th day of March, 1866; that on the 29th day of the same month he was arrested and brought before the justice. That an examination took place on that day, and he was required to give bail in the sum of three hundred dollars for his appearance in the Recorder's Court, in default of which he was committed to the Cook county jail.

The only proof introduced on the trial, tending to show the prosecution ended, was, that on the 5th day of April, A. D. 1866, the plaintiff sued a writ of *habeas corpus* out of the Circuit Court of Cook county, and on the 7th day of the same month was discharged from imprisonment by an order of that court in these words, "and it appearing to the court that the said Hugh Martin, relator as aforesaid, is illegally detained under the custody of the said John A. Nelson, sheriff, etc., therefore it is ordered and considered by the court, that the said Hugh Martin, relator as aforesaid, be and he is hereby discharged, out of the custody of said John A. Nelson, sheriff, etc., and that he go hence thereof without day."

The defendants moved the court to exclude from the evidence in the case, the record of proceedings in the Cook Circuit Court on *habeas corpus*, on the following grounds:

1. Of variance between such record, and the statements of the declaration.

2. That such record did not show plaintiff to have been discharged in the manner alleged, which motion the court overruled and defendants excepted.

The defendants' counsel then moved to exclude all plaintiff's evidence on the same grounds; and also, on the ground that it did not appear that there had been a legal determination of the charge against plaintiff by the proceedings thereon, or that the same has been wholly ended.

This motion was also overruled, and exception taken.

The defense introduced several witnesses who testified that plaintiff's character for honesty and integrity was bad.

Mr. W. K. McALLISTER, for the appellant.

Messrs. U. F. LINDER and G. W. BRANT, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The first point made on this record is, that the action is prematurely brought, for the reason, that the criminal prosecution which originated it was not legally terminated at the time it was commenced, neither by the action or decision of a competent tribunal, nor by abandonment thereof by the appellants as prosecutors.

It appears, a warrant was issued against Martin on the affidavit of Cutting, one of the appellants, made before a justice of the peace of Cook county, charging him with the larceny of some coal, the property of appellants. Martin was arrested on this warrant and brought before the justice, was examined in relation to the charge, and both of the appellants testified as witnesses. Martin was required to give bail for his appearance at the next term of the Recorder's Court to answer the charge; failing to do this, he was committed to jail, where he remained nine days, during which time, he applied to the Circuit Court of Cook county for a writ of *habeas corpus.* A hearing was had on this writ on Saturday, the 7th day of April, and Martin was discharged on that day. On the following Monday, the 9th of April, he commenced this action.

Do these facts show that the prosecution was legally ended?

It is very clear, that, by the proceedings before the magistrate, the prosecution was not ended, for he required the accused to appear at the next term of the Recorder's Court to answer the charge, and, as we must suppose, for the law made it the duty of the magistrate so to do, that he bound over the witnesses who had testified before him to appear at that court at the same term; and we must further presume, that the magistrate returned all the papers to that court, as the law requires. That court commenced its term on the second day of April, the law requiring, that the regular terms of that court shall commence on the first Monday of every month, and was in session on the day the accused was discharged. He was required by the magistrate to appear on the first day of the next term, which would have been the 2d day of April, the commitment having been

on the 29th day of March; the Circuit Court discharged him on the *habeas corpus.*

What effect had this discharge on the recognizance to appear before the Recorder's Court? Appellee contends, that it superseded and nullified all the proceedings before the magistrate, and precluded investigation by the grand jury of the Recorder's Court. We cannot know, for the record does not state, why the Circuit Court discharged the accused — for which one of the seven causes specified in the *habeas corpus* act. Perchance, as suggested by appellants, it was for the reason the process issued by the magistrate was defective in some substantial form required by law. No reason for his discharge is assigned in the order of discharge, nor is there any statement in it, that the merits were investigated, and the innocence of the accused made manifest, or any thing of that nature. But we must presume the court did examine the merits of the case, and became satisfied the criminal charge was not established. The law made it the duty of the court to investigate the charge, and we must presume the court performed its whole duty.

But to say, that the prosecution was legally terminated, by what appears in this record, when the record shows the return of the papers and the bail bond for the appearance of the witnesses before that court, and as nothing is shown of the final action of that court thereon, to insist that the discharge on *habeas corpus* precluded an investigation by the grand jury, is not the law, nor is it reasonable. A prisoner may be discharged from actual imprisonment by the efficacy of this writ, but it does not wipe out the offense. A hearing on *habeas corpus* is had, most usually, for the purpose of admitting the accused to bail; and though, in the opinion of a majority of the court, the judge or court granting the writ may revise and reverse the decision of the committing magistrate, on the merits, still, the statute emphatically declares, that the accused may be again imprisoned for the same cause, if an indictment be found against him, or by the legal order or process of the court, wherein he is bound by recognizance to appear. Scates' Comp. 810, *Habeas corpus* act, § 7. Hence, it follows, that

the case of the accused was subject to the action of the Recorder's Court.

The appellee in this case should have shown, or it should have been made to appear on the trial, that the State's attorney did not send the case, with the recognized witnesses, to the grand jury. Or if he did send them, and no steps were taken by the people in the Recorder's Court, then the discharge under the *habeas corpus* act should be considered as having ended the prosecution.

Under the facts shown in this record, the prosecution was not ended by the discharge of the appellee by the Circuit Court. On principle, and for the safety of the republic, such a discharge should not *per se* have such an effect. If it had, the vilest criminals might go " unwhipp'd of justice."

The remaining question is, are the damages excessive ?

That the courts have power to set aside verdicts, for the reason that the damages assessed are excessive, is not, and cannot be, questioned. It has been exercised, without challenge, for more than two hundred years, and has grown into a principle, in our system of jurisprudence, which we are not at liberty to disregard. Cases are numerous in which this court has exercised this power, always reluctantly, yet, in every case, where it appeared probable, from the amount of damages assessed, that the jury had acted under the influence of prejudice or passion. In such cases, it would be a severe reflection upon the law, and a stigma upon the trial by jury itself, to say that no redress could be afforded — to admit that a jury is " a chartered libertine," free to indulge their worst passions, and through their influence, victimize every man who may be so unfortunate as to have a case before it, in which his conduct does not show to the best advantage. A jury has the power, in a proper case, to visit a *tort feasor* with heavy damages, but it has no right to crush him. While great latitude must be and is allowed juries in all actions for personal torts, yet, it must be confined within some limits, no less for justice's sake than for the protection of the citizen. In these kind of torts it is impossible to estimate precisely the measure of damages

which would repair the alleged injury. To a great extent it is a matter of sentiment and feeling, under the guidance of sound judgment, duly weighing all the circumstances of the case, as was said by Chief Justice THOMPSON, in the case of *McConnell* v. *Hampton,* 12 Johns. 234. In that case, Hampton, a general in the service of the United States in the war of 1812, had arrested, in August, 1813, one McConnell, and had him taken to the guard-house and confined from Tuesday until the following Sunday. He lay on the floor of the guard-house without any bed. He was allowed to procure his own provisions, and had, besides, the rations of a soldier, and was permitted to speak to others, in the presence of an officer, but not allowed to leave the guard-house. The witness stated that McConnell was " a back and forth trader, and of a respectable character." Hampton declared to the witness, that he should have been justified to have hanged McConnell immediately at the halberts, but would have him tried by a court-martial; that Hampton afterward declared that McConnell was not in a worse situation than he ought to be; that he could convict him, and that he should be convicted, if possible, and hanged; for he was guilty of treason, and had been in company with two British officers, and had given information to the enemy. This was explained favorably to McConnell, and another witness stated, that, at the time of the court-martial, Hampton appeared much prejudiced against the plaintiff, and it was understood there was a personal difference between them. General Hampton, it was proved, was a man of liberal education, and had a yearly income of sixty thousand dollars.

The jury found a verdict for the plaintiff for nine thousand dollars damages, which was set aside solely on the ground that the damages were excessive.

The judge admitted that the circumstances of the case, when viewed on one side only, were well calculated to excite feelings of indignation in a jury, and if the defendant was wantonly exercising his military power for the purpose of gratifying any private resentment, it was an aggravated case. And the judge said there was good reason for believing, from the amount of

damages, that some such considerations must have operated on the feelings of the jury, without duly weighing the circumstances, which went to show, and afforded good ground to believe, that the defendant acted under an honest, though mistaken opinion, that he had a right to try the plaintiff on a charge of treason; and if this was a fair conclusion to be drawn from the testimony, it would strike every one, at first blush, that the damages allowed were outrageous.

And this distinguished judge said, " To refuse a new trial, would, in effect, be saying that a new trial ought never to be granted in actions of this description; and, although the defendant is a man of very large fortune, the plaintiff's injury is not thereby enhanced."

There are some points of resemblance between that case and this. That was an action of trespass for an assault and false imprisonment: this is an action on the case for a malicious prosecution. In both, it is insisted, the law was perverted to a bad purpose, malice and oppression are perceivable in both, and the defendants in both are men of large fortune. In one case a verdict of nine thousand dollars was set aside, as outrageous. In this case the verdict is for twenty thousand dollars, a sum greater than the private fortunes of two-thirds of our whole population. We make no attempt now to find circumstances to mitigate the wrong done by the appellants to appellee, but have taken it in all its magnitude, and admit that appellants did, maliciously, without probable cause, prosecute appellee, on a charge of larceny of coal belonging to appellants; that they did imprison him for some days, and that the accused was discharged from imprisonment, and from the charge by a court of competent authority, and that Walker boasted of what he had done, and declared his ability to pay any damages a jury might find against him, and this in a public tavern, at the time the trial of his case was going on.

But there is one fact, which the jury do not seem to have heeded, in estimating the damages — that is, the plaintiff's character. The weight of evidence is, that it was bad, and that should have had much weight with the jury. This action of

malicious prosecution, is of kin to the action of slander, and as in that, the damage consists in part in injury to character by a criminal charge, and not wholly in the mere physical injury consequent on the imprisonment on the charge. There is a vast difference between men in society, although theoretically they are all equal. He who has a fair character among his acquaintances and in community generally, is entitled, in an action for defaming it, to greater damages than one suing on a doubtful character; but it must be a very strong case indeed, in which any man, no matter how high may be his social position, no matter how unsullied his character, can be accorded the right to receive for defaming it the enormous sum given in this case. It is a handsome fortune, and places the receiver of it at once on high and independent ground. "It is a golden shower, and pour'd, not on the head of purity and innocence." Its parallel cannot be found in such an action in the judicial annals of any country in the civilized world.

Though damages in such cases are very much a matter of sentiment and feeling, and no rule can be prescribed by which they shall be measured, still, the judgment of the jury must be exercised in every case, and all the circumstances duly weighed by them. It seems to us, the jury did not give proper weight to the evidence of respectable men, that the plaintiff's character was not good; that he was not an object on which they should lavish so much generosity; that nothing which the appellants did, however maliciously, demanded at the hands of the jury such a vengeful bolt as they hurled at the appellants. The conduct of one of them, while attending the trial of the issue in Will county, though evincing a high degree of malice, though it manifested a reckless disregard of the feelings of appellee, and a spirit of bravado and persecution, not to be tolerated, and most unjustifiable, yet, with all this, the verdict for the wrong is outrageous. No impartial and unprejudiced mind can, for a single moment, indulge the supposition, that appellee was entitled to $20,000. As this court said in *Park's case*, 18 Ill. 460, "the very statement of the proposition is startling, and carries conviction to the mind at once, that the jury

were led to find their verdict, not from the facts alone, and the law·as applicable to those facts "; and we say, as was further said in that case, " this verdict cannot, upon principle, be sustained. To uphold it, would not only be doing a great wrong to the appellee in this particular case, but as a precedent would be doing an infinitely greater wrong to the community, who might suffer by it."

The verdict in that case was but for $1,000, and the wrong done was upon a distinguished member of the bar of this court of good character and high standing therein. What then shall be said of this verdict, dwarfing as it does all previous verdicts ever rendered in a like case? Can we say less, than that it is the result of prejudice and passion, in which the judgment of the jury did not participate? Believing thus, we have no hesitation in setting it aside, and awarding a new trial, on the ground alone that the damages are outrageous.

The judgment is reversed and the cause remanded, that a new trial may be had. It is eminently a fit case for the consideration of another jury.

*Judgment reversed.*

WALKER, Ch. J., dissents.