# ROBERT TIMMONS

*v.*

# HENRY P. BROYLES *et ux.*

1. NEW TRIAL—*excessive damages.* Where, in an action for personal injuries, the damages awarded are so entirely disproportionate to the offense proved, as to justify the inference that the jury were governed by passion or prejudice, the verdict will be set aside.

2. And in an action of trespass, wherein the declaration charged an attempt to ravish, and the proof showed, simply, disgraceful conduct on the part of the defendant, and gross insult offered to the plaintiff, but no attempt to ravish her, and she received no personal injury, a verdict of $2,500 is excessive.

3. In actions of this character, great care and exceeding caution should be observed by juries, in order that their award of damages may not justify the inference that their action was not founded upon a due consideration of the intrinsic merits of the case, but rather upon passion or prejudice.

4. And in such cases, when the award of the jury is manifestly excessive, it is the duty of the court to grant a new trial.

5. ERROR—*will not always reverse.* When substantial justice has been done, a judgment will not be reversed, merely because an improper instruction was given.

APPEAL from the Circuit Court of Macon county; the Hon. JOHN M. SCOTT, Judge, presiding.

The opinion fully states the case.

Messrs. BUNN, EMERSON & SMITH, for the appellant.

Mr. H. CREA, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of trespass, assault and battery, brought to the Circuit Court of Macon county, by Henry P. Broyles and Angelina, his wife, against Robert Timmons.

The declaration in the first count alleged an assault and battery upon the wife, and the second, an assault and battery, with intent to commit a rape upon her. The plea was, not guilty, and on trial by a jury, a verdict was rendered against the defendant for four thousand dollars. The defendant entered a motion for a new trial, whereupon the plaintiffs entered a *remittitur* for fifteen hundred dollars, and thereupon the court rendered judgment against the defendant for two thousand five hundred dollars; to reverse which, the defendant has appealed to this court, assigning for error, the refusal to give, on behalf of defendant, certain instructions, and in giving improper instructions for the plaintiffs, and for the further reason, that the damages are excessive.

To perceive the bearing of one of the instructions given for the plaintiffs, and one refused as asked by the defendant, and to dispose, properly, of the last cause assigned, that of excessive damages, it is necessary to examine the facts of the case.

The principal witnesses to substantiate the charge, were the plaintiffs themselves, neither of whom proved any actual battery. The plaintiffs were in the position of domestics, or "hired help," living at defendant's house, occupying a room there, and employed, the husband about out-door work, and the wife in cooking and other domestic services.

There is no doubt whatever, that the defendant's conduct towards Mrs. Broyles was of the most insulting character, well calculated to outrage the feelings of a virtuous woman, and devoid of any palliation or excuse, yet the question remains, does the proof show, taking it in its most unfavorable aspect towards the defendant, that an assault and battery, with the intent charged, was made or attempted?

The proof by Mrs. Broyles is, that when in her room, on a certain morning, engaged in cutting out a shirt for her husband, the defendant, who, at breakfast said he was going to town that day, and asked if any of the family wanted anything from town, and she had told him she wanted some thread, came into her

room and asked her what kind of thread she wanted, and having told him, and having also, in reply to a question he asked of her what she was doing, said she was making shirts for her husband, and, on his inquiring, said she would make some for him ; she then proceeded to say, that the defendant then said, " Mrs. Broyles, you look mighty sweet this morning," and as he said it and moved away from the table, advanced a step or two to where she was standing, caught her round the body with his right arm, tookhold of her clothes with his left hand, raised them and said he would like to have intercourse with her. She then says, she tore loose from him, and defendant then said he must have a kiss any how ; she then went for a chair and told him she would kill him if he did not leave the room. He then went out, mounted his horse, and rode off. This was about nine o'clock in the morning. Her husband was then out on the place at work. She, crying, went out of her room into the middle room, and told Mrs. Timmons what had happened. She and her husband left the house the next morning.

The above is, substantially, all the evidence touching an actual assault, and embraces all the evidence of the intent charged.

That an assault was made is indisputable—that he pulled up her clothes to some extent is proved—that he said he wanted to have intercourse with her is proved ; but that he made any attempt toward the act, or was in a condition, at the time, prepared to do the act is not proved, nor can it be inferred ; that he made no attempt to kiss her is manifest.

To what extent he raised her clothes is not shown ; whether any part of her person was exposed by this act, does not appear. There was a bed in the room, but no proof he attempted to get her on the bed ; in short, there is no proof that this disgraceful and most unmanly and unjustifiable assault upon her, was made for any purpose of ravishing her by force, and against her will. It is not sustained by the evidence.

The question then is, admitting the conduct of the defendant to have been of the most disgraceful and reprehensible character, and that a jury in such a case can, and should, give vindictive or exemplary damages, still, is there not, and must there not be some limit to the action of the jury? Can any reasonable man doubt the finding was not the cool and unbiased judgment of the jury, but rather the result of passion, so naturally aroused by the relation of scenes so disgraceful.

It is said by appellees' counsel, that the rights of. Mrs. Broyles are as sacred in the eyes of the law and as safe in the keeping of this court, as the rights of any woman in this State, be she the wife of a Senator or of the Chief Magistrate. But we, while admitting this, as a mere question of right, would undertake to say, that the wives of these personages would never bring such a case before a court of justice, and no other person, who did not, as Broyles did, see money in it. We think the damages awarded are so entirely disproportionate to the offense, mean, dastardly, and grievous as it may have been and was, as to justify the inference the jury acted from prejudice and passion, and not on a due consideration of the intrinsic merits of the case.      That this woman has been grossly insulted, and her feelings wounded, cannot be denied, yet at the same time, the facts, when examined, are not of such a character as to justify a jury in rendering a verdict depriving the guilty party of his whole property, or even of a large portion of it.

As parties are now allowed to be witnesses in their own behalf, it is in the power of any woman to distort innocent familiarities into grievous wrongs, and destroy a man into whose heart guilt had not entered, and if this verdict is retained, it is not unreasonable to expect a multitude of such cases upon the dockets of our courts.      No easier way to make money can be pointed out, and the actors will be as readily found as the desired victim.      Social intercourse would be surrounded by so

many dangers as to destroy it altogether. A designing woman is in a position, by an artfully concocted scheme, of which she is the sole witness, to deprive a neighbor, who did no wrong and intended none, of the means of living, and not only that, but subject him to the scorn and contumely of the public. Great care, therefore, and exceeding caution should be observed by juries when such a case is presented to their consideration. The plaintiffs themselves, or their counsel for them, must have been amazed at the enormity of this verdict, for on their own motion they remitted more than one third of it, and after all that, it strikes us at first blush to be, even after the remittitur, as outrageously excessive, and ought not to stand. While there is no apology for the defendant, the fact is patent, the woman received no personal injury, and no attempt to ravish her was proved.

At the interview had on the morning succeeding the occurrence, when Broyles called for a settlement, preparatory to leaving the house, it was not asserted, by either the husband or wife, that defendant had attempted a rape upon her; the only charge was that he had pulled up her clothes, and then came the threat by the husband of legal proceedings.

There was a technical assault, undoubtedly, and the attempt to raise her clothes was an insult and indignity of the grossest character, for which the jury would be well authorized to give smart money, if they believed the statement.

What amount this should be, it is very difficult to say; indeed, it may be said to be impossible to estimate precisely the measure of damages which would repair injuries of this character. It must ever be, to a certain extent, as this court said in *Walker* v. *Martin*, 43 Ill., 508, a matter of sentiment and feeling, under the guidance of sound judgment, the circumstances of the case being all properly weighed. We think it may be safely stated, that it is the duty of a court, when it cannot but perceive the damages given are greatly disproportionate to the case proved, to send the

cause for revision by another jury. Such, we are of opinion, is this case.

We will now advert to the instructions questioned.

The second asked by the plaintiff was as follows:

"The jury are further instructed that the testimony of witnesses, as to remarks made by the parties and casually overheard by such witnesses, is not regarded by the law as the highest class of evidence, and it is the duty of the jury to consider whether such statements were deliberately made, and whether they were correctly understood and properly related by such witnesses."

This instruction was prompted by certain testimony, introduced by the defendant, to this effect: John G. Hornbarger testified that when he was going home from court, and on his way to the depot, he fell in company with the plaintiffs, and after going some distance Mr. Broyles became separated from them, and witness did not see him any more until they got to the depot. Witness asked Mrs. Broyles if she was going to swear that Timmons attempted to commit a rape on her. She said she was not—she was not going to swear a lie—that Timmons did not attempt to commit a rape on her; that all he attempted to do was to kiss her, and that if she got safe home, she would never come back again to attend this court. Witness was in attendance on the court on behalf of the defendant—had been subpœnaed for defendant. A. D. Thomas testified, that last spring, during court, the plaintiffs started to ride home with him; after a while Mr. Broyles got out and got into another wagon. Witness afterward asked Mrs. Broyles what Timmons had done to her. She replied, "Mr. Timmons tried to kiss me."

It will be seen here was direct testimony, when the parties and witnesses were face to face, in which "casual overhearing" had no existence. To give the evidence that character, with the inference or proposition drawn from it by the court, or predicated upon it, was calculated to mislead the jury, and

13—47TH ILL.

to prevent them from giving that weight and consideration to the testimony to which it was fairly entitled. The witnesses did not "casually" overhear, or hear these statements of Mrs. Broyles, for they were positive statements made by her to the witnesses, and, as such, should have had their full force and effect with the jury, which, doubtless, they would have had, had not this instruction been given. We think it was error to give it.

It is complained by appellant that the following instruction should have been given, as asked by him:

"That if the jury believe from the evidence that the plaintiff, Mrs. Broyles, told the witnesses, Thomas and Hornbarger, when asked by them what it was that Timmons did to her, that she said that he attempted to kiss her, that would be a contradiction of Mrs. Broyles in a material point, if Mrs. Broyles stated in her evidence that she did not so state to them."

The proposition embraced in this instruction is undoubtedly true, but it was for the jury to determine which party they should believe; if given as asked, it would have misled the jury.

Although we are of opinion the instruction above given for the plaintiff should have been refused, still, if from the whole record, it appeared substantial justice had been done, we should not disturb the verdict. Apart from the amount of damages, such justice has been done by the verdict. They, we are compelled to believe, are so excessive, when compared with the offense proved, as to require us to remand the cause that it may be re-examined by another jury.

The judgment is reversed and the cause remanded.

*Judgment reversed.*