### John W. Millar v. Oliver Sollitt.

#### Gen. No. 12,693.

1. NEW CAUSE OF ACTION—*when additional count in slander does not set up.* Held, that the additional count filed in this cause did not set up a new and different cause of action from the count in slander originally relied upon.

2. MALICIOUS PROSECUTION—*when criminal prosecution made basis of action for, deemed ended.* Where a plaintiff after being arrested was bound over by the magistrate to the grand jury and was subsequently discharged upon *habeas corpus*, the prosecution is at an end, and a suit for malicious prosecution may be instituted.

3. REJOINDER—*when burden of proving, upon defendant.* Where the rejoinder is a confession and avoidance, the burden of proof is upon the defendant to prove the matter of avoidance, and it is not essential that the plaintiff undertake to establish by evidence the averments of the replication rejoined to.

Action on the case. Appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1906. Reversed and remanded. Opinion filed January 21, 1907. Rehearing denied February 4, 1907.

FRED H. RAYMOND and IRA C. WOOD, for appellant.

EUGENE H. GARNETT, for appellee; GWYNN GARNETT, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant was plaintiff and appellee defendant in the trial court, and will be so referred to here. The original declaration, filed October 17, 1900, consisted of four counts, but the plaintiff discontinued as to the third and fourth counts. The first count avers, in substance, that, to wit, October 21, 1899, the defendant falsely, maliciously and without any probable cause, appeared before a justice of the peace of Lake county, Illinois, and charged plaintiff with having knowingly and fraudulently sold certain lands and appurtenances, after having once sold the same to another party, contrary to section 121 of the Criminal Code of the State of Illinois, and caused the said justice to issue a warrant for the apprehension and bringing before said justice of the plaintiff, and, by virtue of said warrant, the defendant, wrongfully, unjustly and without any reasonable or probable cause, caused plaintiff to be arrested and imprisoned in the county jail of Lake county, to wit, six days, and until, to wit, October 27, 1899, when defendant, falsely, maliciously and without probable cause, caused plaintiff to be carried before said justice, from whom a change of venue was taken, and said cause was transferred to one Lazell C. Manzer, a justice of the peace for the county of Lake, who on plaintiff's motion, quashed said complaint, and then and there caused plaintiff to be discharged out of custody and fully acquitted.

The second count of the original declaration is for slander, and averred as follows: "He and Millar (meaning the plaintiff) have got themeslves into a pretty scrape. Millar (meaning the plaintiff) is in jail there at Waukegan. That is the county seat of Lake county. Doctor Moore stands in good chance of getting to the penitentiary for ten years. He and Millar (meaning the plaintiff) and his sister have flimflammed me out of that property. They (meaning Dr. Moore and Millar and Dr. Moore's sister) are

not alone satisfied with that, but are stealing and car-
rying away all of the household furniture and every-
thing about the place'' (meaning and intending then
and there and thereby to charge the plaintiff with
the crime of larceny).

March 27, 1905, the count was amended to aver as
follows: ''They (meaning and intending thereby the
said plaintiff, Millar, and the wife of the said plaint-
iff and the said Doctor Moore) had flimflammed him
out of some property at Fox Lake, and they (mean-
ing the same persons above named) were not satis-
fied with that, but they were stealing and carrying
off the furniture of the hotel (meaning and intend-
ing the household furniture at or upon said property
at Fox Lake, in Lake county, Illinois,. and meaning
and intending then and thereby to charge the plaintiff
with the crime of larceny).''

The defendant pleaded the Statute of Limitations
to the count as amended, to which the plaintiff de-
murred, the court overruled the demurrer, and plaint-
iff elected to stand by his demurrer.

March 25, 1902, the plaintiff, by leave of the court,
filed four additional counts. These counts are all for
malicious prosecution, and as no question is raised as
to their sufficiency, we deem it unnecessary to state
their contents. The defendant pleaded to the original
declaration and the additional counts, the general is-
sue, with notice of special matter. A fifth additional
count was filed, to which the defendant pleaded the
Statute of Limitations, to which the plaintiff de-
murred, and the demurrer was overruled. January 30,
1904, defendant had leave of the court to withdraw his
pleas of the general issue and file special pleas. Then
follow numerous special pleas, replications, rejoinders
demurrers, etc., occupying about 100 pages of the rec-
ord. The matter of these pleadings, so far as the same
was competent and material, might, except in the case
of the plea of the Statute of Limitations, have been put

in evidence under the general issue. It would almost require the thread of Ariadne to guide one through the labyrinthian maze of unnecessary pleading which cumbers the record before us. The tendency of modern practice is toward simplicity in pleading, and such pleading as occurred in this case should not be permitted. It tends to create confusion, is a waste of the time of the courts, and entails unnecessary expense on the parties litigant. Only such of the pleadings and rulings thereon as we find it necessary to refer to in passing on questions raised by counsel, will be specially noticed. It is sufficient to say that the pleadings put in issue the questions of probable cause, malice, and whether the prosecution was or not terminated before suit brought. It appears from the opinion of the trial court, which is included in the bill of exceptions, that the court took the case from the jury, by an instruction to find the defendant not guilty, on the sole ground that, in the court's opinion, the prosecution had not terminated before the suit was commenced. Whether the prosecution had terminated prior to the commencement of the suit, was a question of fact, and if there was evidence fairly tending to prove such termination, the question should have been submitted to the jury, with appropriate instructions. The decisions, in this state, in support of this proposition, are too numerous and too familiar to the profession to require citation. On passing on a motion to take a case from the jury, the court cannot weigh the evidence, but is strictly limited to determining whether there is or not any evidence legally tending to support the case of the party against whom the motion is made; and, if there is such evidence, the case must go to the jury. Frazer v. Howe, 106 Ill. 563.

The testimony of witnesses called by the plaintiff, which was given without objection, fairly tends to prove that the prosecution was ended before suit brought. The plaintiff testified that, on the hearing

of the *habeas corpus* case, in the Circuit Court of
Lake county, the state's attorney, sheriff, bailiff and
court officers were present, and that he was dis-
charged from custody by the court, and that such dis-
charge was the last proceeding, in connection with the
matter, of which he had any knowledge, and that he
was never again in court on the charge, and was
never re-arrested. The *habeas corpus* proceedings oc-
curred November 9, 1899, and plaintiff testified as
stated at the March term, 1905. Mr. Langworthy, an
attorney who appeared for plaintiff in the *habeas
corpus* case, testified that he, the plaintiff, the sheriff of
Lake county, Dr. Moore and Mr. Wagner were pres-
ent; that plaintiff, Moore and Wagner testified; that
he, Langworthy, asked questions on the direct, and
the state's attorney cross-examined; also, that docu-
ments bearing on the question of plaintiff's guilt or
innocence were put in evidence, and that, at the close
of the plaintiff's evidence, the state's attorney said to
the court: ''We have no evidence to offer. There
is nothing to show that the state has a case against
Mr. Millar, and I don't believe there is any case
against him,'' and he said that he would recommend
that he be discharged. It was admitted on the trial
by the attorneys for defendant, that plaintiff was
discharged in the *habeas corpus* case. The regular
terms of the Circuit Court of Lake county are in March
and October. Hurd's Rev. Statutes 1903, p. 582,
paragraph 789. Mr. Langworthy further testified
that he was present at the March term, 1900, of the
Circuit Court of Lake county, which was the term next
after plaintiff's discharge, and was present during
a conversation between defendant and Mr. Brougham,
defendant's attorney, and the state's attorney, and
the state's attorney said to defendant that he had
issued a subpoena for, or notified him, defendant, so
that he could come if he wished, but stated that he had
looked into the matter very carefully, and was sat-

Millar v. Sollitt.

isfied that the people had no case against plaintiff, and, if they had a case, there was no jurisdiction in Lake county, and that Mr. Brougham and the state's attorney had some talk together, after which the state's attorney said to witness, "They are not going before the grand jury;" also that the state's attorney said to him, "I had notified Mr. Sollitt to come before the grand jury in this matter, if he wanted to; I wanted to do my full duty in it, and while I myself am satisfied they have no case, nor has this court got any jurisdiction, I wanted to give them an opportunity if they wanted to go before the grand jury, to go, and they have decided not to go before the grand jury." The doubt in the mind of the state's attorney as to the jurisdiction arose from the fact that the deed in question was executed in Cook county, in respect to land situated in Lake county. Dr. Moore testified that, after the court had rendered its decision in the *habeas corpus* case, the state's attorney said, "There is no case against this man. I shall go no further with it." Mr. Heydecker, state's attorney of Lake county, testified that, at the March term, 1900, of the Lake county Circuit Court, defendant and Mr. Brougham, his attorney, appeared at the court, in answer to a subpoena; that they did not go before the grand jury, and no indictment was found against the plaintiff at the March term, or at all while he was state's attorney, which he was until December 1, 1900.

The question is not whether another prosecution might have been commenced, but whether the prosecution which was commenced in Lake county had terminated before suit brought. Apgar v. Woolston, 43 N. J. L. 57, 67-8.

In Walker v. Martin, 43 Ill. 508, 513, it appeared that the plaintiff had been discharged on *habeas corpus;* the court said: "The appellee in this case should have shown, or it should have been made to appear on the trial, that the state's attorney did not send the case, with the recognized witnesses, to the grand jury.

Or, if he did send them, and no steps were taken by the people in the Recorder's Court, then the discharge under the *habeas corpus* act should be considered as having ended the prosecution." The evidence in this case shows that the state's attorney notified the defendant to be at the Circuit Court of Lake county, at the March term, 1900, with his witnesses; that the defendant received the notification, and appeared as notified by it; that every opportunity was given him to appear before the grand jury, which was in session at said March term, and to produce witnesses, and that he did not so appear, and, so far as the evidence shows, nothing has been done in the matter since said time. The warrant of commitment issued by Manzer, justice, recites that he fixed plaintiff's bail at the sum of $2,000, for his appearance at the next term of the Circuit Court of Lake county, and that plaintiff did not offer sufficient bail, and it was therefore ordered that he be committed to jail, and there kept "until discharged by due process of law." The proceeding in *habeas corpus,* before the Circuit Court of Lake county, before which court plaintiff was held to appear, was in the nature of an appeal from the justice who committed him, and the court had ample jurisdiction to hear and pass on all evidence which might be produced before him. In Walker v. Martin, *supra,* the court speaking of the duty of the court, on *habeas corpus,* say: "The law made it the duty of the court to investigate the charge, and we must presume the court performed its whole duty." In this case the evidence shows that the court heard evidence and investigated the charge and discharged the plaintiff. The court, in effect, reversed the decision of the justice.

In Zebley v. Story, 117 Penn. St. 478, the court say, p. 486: "The second and ninth assignments of error may be considered together. The first alleges errors in admitting in evidence the record of the Quarter Sessions upon the *habeas corpus* proceeding. The sec-

ond was to the refusal to affirm the defendant's last point. The point was as follows: 'A discharge of the plaintiff upon a writ of *habeas corpus,* after hearing thereon in the Court of Quarter Sessions, is not such a final determination of the prosecution against him as will entitle him to maintain his present action, and the verdict of the jury must be for the defendant.' '' In respect to the alleged errors, the court say: ''The nearest approach to an authority in this state is the ruling of the late Justice Bell at *nisi prius,* in Charles v. Abell, Brightly 131, where he held that a discharge on *habeas corpus* puts an end to a criminal prosecution, so as to enable the defendant therein to maintain an action for malicious prosecution. It was said by that learned judge: 'It must be acknowledged that the law on this subject has undergone many alterations in modern times. It seems to be now agreed, that if a grand jury ignore the bill, it is sufficient to maintain the action. But this rule has been still further modified, and it is settled that if a party is brought before an examining magistrate and discharged, though the proceeding might be again renewed, still, in point of law, that prosecution is ended, and the party may maintain the action for malicious prosecution. There is a precedent for a declaration in Chitty's pleadings, in an action brought under such circumstances. There is no difference in point of principle and practice between a discharge by a committing magistrate and a discharge by a judge who examines the case upon *habeas corpus.* It as effectually puts an end to the prosecution as if the defendant were discharged by a magistrate, although a new charge may be afterwards made.' The practice of commencing suits for a malicious prosecution, after a hearing and discharge by a committing magistrate, appears to have passed unchallenged in this state. There are many such cases in our reports. It is sufficient to refer to Orr v. Seiler, 1 Penny. 445; Bernar v. Dunlap, 94 Pa. 329. It would be unreasonable to

give greater effect to the discharge of a prisoner by a committing magistrate, who is ordinarily a layman, than to a discharge upon *habeas corpus* by a judge of a court of record.''

In Lowe v Wartman, 47 N. J. Law, 413, the court say: ''A criminal prosecution may be said to have been terminated, 1, where there is a verdict of not guilty; 2, where the grand jury ignore a bill; 3, where a *nolle prosequi* is entered; and, 4, where the accused has been discharged from bail or imprisonment.''

Leever v. Hamill, 57 Ind. 423, was an action for malicious prosecution and imprisonment. The court say: ''But the appellant insists that the evidence does not show a final determination of the prosecution complained of, and a discharge of the appellee therefrom. It is true, that no record evidence was shown of a final discharge of the appellee; but his arrest for larceny and imprisonment, at the instance of the appellant, are shown, and that the appellee appeared before the mayor in obedience to the writ; that, no prosecuting witness appearing, the case was continued; that he appeared again, according to the continuance; that still no witness appeared against him, and no trial was had, but that he was allowed to go at liberty; all of which was shown by parol evidence, without objection, and which stands uncontradicted. We think this is sufficient to authorize the jury to find that the prosecution was at an end.''

In Schoonover v. Myers, 28 Ill. 308, which was case for malicious prosecution, the court say: ''Again it is said that the prosecution was not sufficiently ended when this action was brought. No indictment was found, nor was one returned *ignored* by the grand jury, but the recognizance was discharged by the state's attorney. This, according to our practice, is the usual mode of terminating a prosecution where the party has been recognized by a magistrate, or in case he has been committed; it is by discharging him from jail, where the evidence is insufficient to induce

the grand jury to find an indictment.'' See also Halliday v. Halliday, 123 Ga. 26.

The plaintiff Millar had given no recognizance or bail bond. He had been committed to jail to await the action of the grand jury. The court on the *habeas corpus* proceeding not only had jurisdiction to investigate, but, as said by the court in Walker v. Martin, *supra,* it was the court's duty so to do. Jurisdiction includes not only the right to hear but the power to determine, and the Circuit Court of Lake county, having such power, and having heard the evidence, adjudged in respect of the plaintiff ''that he go hence without day.'' We think the evidence in the record, which includes other evidence not referred to in this opinion, fairly and legally tends to prove that the prosecution was ended before the commencement of the suit.

Plaintiff offered in evidence a certified transcript of the proceedings in the Circuit Court of Lake county on plaintiff's petition for the writ of *habeas corpus,* to which the attorney for defendant objected, saying: ''That is objected to, on the ground that it is averred in the declaration that Millar was discharged by *habeas corpus,* and is not denied and is not in issue.'' The court sustained this remarkable objection and excluded the evidence. The transcript is the very best evidence of the proceeding and judgment in the *habeas corpus* matter. We strongly suspect that the real, though unexpressed, ground of the objection was, that the defendant's attorney thought the evidence too favorable for the plaintiff. The judgment of the court is shown by the excluded transcript to have been as follows:

''Now on this day comes John W. Millar, petitioner herein, by L. Langworthy, his attorney, and Elvin J. Griffin, sheriff of Lake county, Illinois, by C. T. Heydecker, state's attorney of said Lake county, also comes, and said petitioner by his said attorney files his petition for writ of *habeas corpus* to issue and

upon motion of said attorney for said petitioner, it is ordered by the court that a writ of *habeas corpus* do issue herein *instanter* and made returnable forthwith. And thereupon on this day said writ is returned and by bringing said petitioner into court and the court having heard the proofs adduced on the hearing hereof, and being now fully advised in the premises, and on the consideration thereof, it is ordered by the court that the proceedings heretofore had before Lazel C. Manzer, a justice of the peace of Lake county, Illinois, be and the same are hereby set aside, and it is further ordered by the court that Elvin J. Griffin, sheriff of Lake county, Illinois, release and discharge said John W. Millar from custody and that he go hence without day.''

The evidence also tends to prove that, after the discharge on *habeas corpus,* the defendant and his witnesses appeared at the March term, 1900, of the Circuit Court of Lake county, when the grand jury was in session and had an opportunity to go before the grand jury, but declined so to do, and that plaintiff's discharge on *habeas corpus* was the last proceeding in the prosecution.

Counsel for defendant contend that the evidence as to probable cause, or the want of it, was such that the court should have held, as matter of law, that there was probable cause for the prosecution of plaintiff. We cannot, after careful consideration of the evidence, concur in this view. We think, as before stated, that the evidence fairly tends to prove a want of probable cause, and that the question, on the evidence, is a mixed question of law and fact, to be submitted to the jury with proper instructions.

The court overruled a demurrer to defendant's plea of the Statute of Limitations to the amended count in slander, and the plaintiff elected to stand by his demurrer. The question raised by the demurrer to defendant's plea of the statute is, whether the causes of action set forth in the original and amended counts are the same, or different. So much

of both counts as is sufficient to pass on this question is quoted, *supra*. We are inclined to the opinion that the demurrer was properly overruled. The defendant pleaded the Statute of Limitations to the four additional counts, to which the plaintiff replied, in substance, that the causes of action set forth in said counts accrued October 27, 1899, and, within two years thereafter, August 1, 1900, he brought suit in the Superior Court of Cook county, for the causes of action set forth in said additional counts, and that a judgment of nonsuit in said suit was entered against him in the said Superior Court, in words and figures following:

"JOHN W. MILLAR

vs.

OLIVER SOLLITT and THOMAS

T. BROUGHAM.

This cause being this day called for trial, and the plaintiff failing to prosecute his suit in this behalf, on motion of defendant's attorney it is ordered that said cause be, and the same is, hereby dismissed, at plaintiff's cost, for want of prosecution. Therefore, it is considered by the court that the defendants do have and recover of and from the plaintiff their costs and charges in this behalf expended, and have execution therefor;" and within one  year  thereafter, March 29, 1902, plaintiff filed said additional counts, which are for the same cause of action as in said suit wherein plaintiff was nonsuited.

To this replication the defendant rejoined, in substance, that said order of dismissal "was entered, procured, brought about and allowed by and with the consent, agreement and approval of the said plaintiff, and this the defendant is ready to verify," etc. Counsel for defendant say, in their argument, "There is no evidence concerning a nonsuit," apparently assuming that it was incumbent on the plaintiff to produce such evidence.

208    Appellate Courts of Illinois.

Vol. 131.]    Sprague's Merc. Agency v. McClintock.

The rejoinder is not a traverse, but a plea in confession and avoidance, and so, evidently, the pleader understood, as the rejoinder concludes with a verification. The rejoinder confesses the involuntary nonsuit and seeks to avoid it by the new matter, viz., that it occurred by plaintiff's procurement, etc., and the burden was on the defendant to prove such new matter. Andrews Stephens on Pleading, 2 ed. pp. 312-313; 1 Chitty on Pl., 5 Am. ed. secs. 540-543; Wiley et al. v. Nat. Wall Paper Co., 70 Ill. App. 543.

The judgment will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*