Julius E. Haschke, Appellee, v. Clair A. Orr et al, Appellants.

Gen. No. 16,064.

MALICIOUS PROSECUTION—*what does not render order of discharge incompetent.* Notwithstanding the discharge of the plaintiff in the criminal prosecution is admitted, the plaintiff has the right to introduce the order of discharge, which constitutes the very best evidence of the fact.

Appeal from the Superior Court of Cook county: the HON. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed March 12, 1912.

MCCABE, CLOYES & KULL, for appellant.

SYMMES & KIRKLAND, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

In this case there was a recovery of a judgment for $1,000 for an alleged malicious prosecution. The

charge in the declaration is that the defendants (the appellants) maliciously procured the arrest of the appellee upon a warrant issued by a justice of the peace, the complaint being that he had feloniously converted to his own use, with intent to steal, property of which he was bailee. There were two trials in the court below. At the time of the first trial only one of the defendants had been served with process. The verdict which was obtained at that time was somewhat in excess of the second verdict. It was set aside and a new trial granted. Afterwards and before the second trial the other defendant was served, and entered a plea of not guilty.

The alleged errors discussed by the appellants in their argument relate to the admission and exclusion of evidence, the denying of appellants' motion for a new trial and the motion in arrest of judgment, and the giving of and refusal to give instructions.

The appellee, the plaintiff below, had a patent upon a storage battery for use in electric automobiles, and undertook to interest the defendants in the same, the negotiations resulting in the drawing of several agreements. By the first agreement the appellants, the defendants below, undertook upon the plaintiff's giving them an option on a half interest in his patent, and equipping a specially built car with his patent batteries and demonstrating to the defendants' satisfaction that the battery was "far superior to any other on the market," to pay him $1,000 and to furnish a sum not to exceed $2,000 for equipping a factory and garage. The defendants were to allow plaintiff $2,000 out of the profits, and were to take half the stock in a corporation which was to receive all of the plaintiff's interest in his patents. Later on the defendants advanced $500 to the plaintiff, and took as security a bill of sale on an electric touring car owned by the plaintiff.

The third document signed was a formal agreement prepared by the attorneys for the defendants, in which the plaintiff agreed to sell to the defendants a half interest in the battery, also a half interest in the inventions and improvements, and all patents to be issued for an electric boat propellor, and a half interest in all future inventions and improvements in and to the battery and electric boat propellor. He further agreed to equip an automobile with a storage battery to operate the car to the satisfaction of the defendants. By the third paragraph of the agreement the plaintiff further covenanted and agreed to transfer, assign and set over to a corporation known as the Haschke Compound Storage Battery Company, or such other corporation as the parties might mutually agree to form, all interest in his letters patent issued to the plaintiff or to be issued to him upon the two mentioned devices. He further agreed to devote his time to the promotion of the business. The defendants agreed to pay the plaintiff the sum of $1,000 when he should have equipped an automobile with the battery. They further agreed to furnish a sum not to exceed $2,000 for the purpose of equipping a factory and garage, for the manufacture of the battery and business pertaining to automobiles. There are other provisions in regard to the division of the stock of the Haschke Compound Storage Battery Company, which is stated to be a corporation organized under the laws of the District of Columbia, with a capital stock of $100,000. The agreement further provided that the plaintiff should receive out of the first profits of the business the sum of $2,000, and be paid a salary of $75 per month for one year from the date of the commencement of the business.

After the execution of the last agreement a lease was taken of property on Ashland boulevard in Chicago; some machinery was purchased; the plaintiff invested about $500 in the enterprise and the defend-

ants about $640.   The agreement last referred to was
executed on April 21, 1905.   In July of that year the
defendants requested plaintiff to sign a form of con-
tract which they presented to him, in which it was
recited that all of the provisions in the contract of
April had been fully performed by the defendants;
that they had equipped and opened an electric garage
at 79 Ashland boulevard, which was by them fully
equipped and put in perfect condition for business;
that whereas there had been long delay entailing large
expense and great loss of business and time in the
manufacture of the batteries described in the con-
tract, which delays had not been occasioned by the de-
fendants, that therefore the second clause of the
April contract should be waived by all parties and
that the garage theretofore established should be
closed and the defendants have the right to remove
all the personal property placed by them in the
garage, and that no garage should be established,
equipped or operated by the parties except upon the
mutual consent and agreement in writing of the
parties.   This agreement appears to have been
signed by Orr and Weyl, but plaintiff refused to sign
it, claiming at the time that the defendants had
agreed to give him $2,000 and a salary of $75 per
month, which amounts had not been paid him.   He
testified that he proposed to the defendants that if
they would release his automobile he would "call
things square."   This proposition was declined by
the defendants.

It does not appear clearly in the record whether
business was being done by the corporation hereto-
fore referred to, or by the plaintiff individually.   It
seems, however, that he rented the premises, and that
about the time he was asked to sign the agreement
submitted to him by the defendants as heretofore
stated, the rent of the premises was in arrears and
a suit for possession had been instituted.   It further

appears that the plaintiff asked the defendants to advance money to pay the arrears in rent and offered to do what was fair to adjust matters and have an accounting; that he offered to go to their lawyer or to take them to his adviser, but that the defendants did not accede to this. He testified that he consulted counsel for a second time, and thereafter removed the property to a warehouse; that one reason for doing so was his fear of distraint for rent, and another was that he had been advised by his counsel to retain the property for his own protection. In August following the defendants made a demand upon the plaintiff for the possession of the property, having theretofore demanded of the plaintiff information as to where it had been stored. This plaintiff refused to divulge unless a settlement was reached and his automobile released.

The complaint upon which plaintiff was arrested was sworn to by an office boy, said to be sixteen years of age, employed in the office of the attorneys for the defendants, one of the attorneys being a brother of one of the defendants. Upon a hearing, the justice of the peace who issued the warrant decided there was not probable cause justifying the issuance of the same, and the plaintiff was discharged.

The contention is made by the defendants that the verdict of the jury was wrong, in that the jury did not give sufficient weight to the testimony with regard to the defendants having acted upon the advice of counsel, and also because it was not clearly shown that the office boy was authorized by the defendants to make the complaint. Both of these questions were apparently determined adversely to the defendants by the jury, and the finding of the jury has been approved by the trial judge. We cannot say that their determination was against the weight of the evidence.

The plaintiff contends, and, we think, with reason, that the advice given by the attorney was not based

upon a full disclosure of the facts to him. It seems that the complaint was made on the same date as the demand, viz, August 21, 1905. The office boy, Schein, testified that one of his employers, the attorney, Mr. Wentworth, told him that he, Wentworth, expected a telephone call giving information as to Haschke's whereabouts, and that Schein as soon as the telephone message was received was to take the complaint to a justice of the peace and swear to it. Mr. Wentworth testified that he had already arranged with a constable to make the arrest, and had told him that the warrant would be placed in his hands as soon as Haschke had been located. Haschke was arrested about 6 or 7 o'clock in the evening and taken to the court, where he was detained most of the evening. The matter seems to have been before the justice at several sessions of court, at one of which there was a long hearing.

It is insisted by the defendants that their objection to the admission of the complaint and warrant should have been sustained for the reason that there was a variance between the allegations of the declaration and the proof so offered.

The declaration charged the defendant with having "caused and procured" the issuance of the warrant. We think there was sufficient evidence that the office boy who swore to the complaint was acting for the defendants to justify the admission of the complaint and warrant. Conroy v. Townsend, 69 Ill. App. 61.

We do not think that there was error, as alleged, in the admission of the record showing the termination of the criminal prosecution in favor of the plaintiff. It is true the defendants admitted that the criminal case had resulted in the discharge of the plaintiff, but the plaintiff had the undoubted right to introduce the order of discharge, which constituted the very best

evidence of the fact. Millar v. Sollitt, 131 Ill. App. 196.

The defendants offered in evidence the common law record in a replevin suit brought by them against the plaintiff in this suit for the recovery of the property heretofore referred to, or some of it. This suit was not brought until a month after the termination of the criminal proceedings. It appears that with the record and as part of it, instructions given to the jury in that suit were offered. Clearly the instructions are no part of the record until made so by bill of exceptions. It would seem also that the replevin suit included the automobile of which, as has heretofore been stated, the defendants had a bill of sale to secure a loan. It further appears that the plaintiff, in this proceeding, had the right to retain the machine until October 5, 1905. At the time the criminal proceeding was instituted in August the plaintiff was, under the agreement, still entitled to the possession of the automobile. We do not think, therefore, that the record of the replevin suit should have been received in evidence. The court did not err in excluding it.

It is next urged that the court below should have directed a verdict for the defendants at the close of the plaintiff's case, and also, as that was not done, that such an instruction should have been given when all of the evidence had been taken. In our opinion there was sufficient evidence to warrant the court in submitting the case to the jury.

Some complaint is made of instructions given to the jury, as tendered by the plaintiff, and of the refusal to give four instructions offered by the defendants. Eight instructions as tendered by the plaintiff, and nineteen offered by the defendants, some of them of considerable length, were given. The court also read to the jury an instruction prepared by himself. We think these instructions fully and fairly advised the jury as to the legal propositions which

Haschke v. Orr, 167 Ill. App. 656.

should govern them in arriving at their verdict, and that no error was committed by the court in giving the instructions as tendered by the plaintiff, or in refusing to give the four additional instructions requested by the defendants.

We find no error in the record such as should cause a reversal of the judgment, and the same is therefore affirmed.

*Affirmed.*